**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **COREY TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No. 3:22-cv-00689** |
| **v.** | ) | |
| | ) | **Judge Campbell** |
| **EDWARD BYERS,** | ) | **Magistrate Judge Frensley** |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss. Docket No. 19. Defendant also filed "Defendant Byer's Memorandum in Support of His Motion to Dismiss" (Docket No. 20) and "Defendant Byer's Reply in Support of His Motion to Dismiss" (Docket No. 22). Plaintiff subsequently filed a document titled as a "Motion of Objection- Opposing Defendant Edward Byers- Motion to Dismiss" (Docket No. 21) as well as a response to Defendant's Reply titled "Motion in Objection to Defendant's Motion to Dismiss." (Docket No. 23).

For the reasons stated below, the undersigned recommends that Defendant's Motion (Docket No. 19) be **DENIED**.

### I.    INTRODUCTION AND BACKGROUND

On December 12, 2022, Corey Taylor ("Plaintiff"), who is proceeding pro se, filed an Amended Complaint (Docket No. 14) claiming that his First Amendment rights were violated. Plaintiff alleges that on August 23, 2022, Officer Edward Byers ("Defendant") from the Davidson County Sheriff's Office (DCSO) entered Plaintiff's housing unit to conduct recreation time for the inmates. Docket No. 14, p. 1. During this time, Plaintiff covered his cell door window to indicate that he was using the restroom. *Id.* Defendant opened Plaintiff's door and

1

said, "I hope you are taking a sh** [*sic*] and do not have anyone in there [d]oing anything with them[.]" Docket No. 14, p.1. Plaintiff says this comment "was insinuating that [he] was engaging in [h]omosexual activities with another [m]an [.]" *Id.* Plaintiff states that he is "homophobic and a victim of past sexual abuse," so Defendant's comment "mentally and emotionally [d]isturbed/bothered [*sic*]" Plaintiff and "filled [him] with mental and emotional anguish." *Id.*

After exiting his cell, Plaintiff requested to speak with a sergeant to file a Prison Rape Elimination Act ("PREA") complaint against Defendant. *Id.* He also told Defendant, "[H]ow would you like it if I called you a B**** [*sic*]" and " B**** [*sic*] go get me a sergeant[.]" *Id.* Plaintiff claims that Defendant "acted as if [Plaintiff] [d]idn't request a sergeant" and "refused to call a sergeant[.]" *Id.* Defendant then "tried to persuade [Plaintiff] to not file a prea [*sic*][.]" *Id.* Plaintiff attempted to call the PREA hotline, but was unsuccessful because the number was blocked. (Docket No. 21, p. 1). Plaintiff told Defendant that after he showered, Defendant "better have [Plaintiff] a sergeant," but after showering Defendant "stilled [*sic*] refused to contact a sergeant[.]" (Docket No. 14, p. 1-2). Plaintiff claimed he "became fearful of [his] well-being" due to Defendant's demeanor. *Id.* at 2.

Defendant "threatened to write [Plaintiff] up 'issuing a disciplinary report' and then proceed[ed] to type one" (Docket No. 21, p. 1) when Officer Dye ("Dye") and Officer King entered Plaintiff's housing unit. (Docket No. 14, p. 2). Plaintiff asked to speak with Dye, and Defendant showed Dye the disciplinary report. *Id.* Dye told Defendant, "No you can't do that" and then asked Plaintiff to explain the situation to her. *Id.* Dye then passed on the information to Sergeant Bolton ("Bolton"), who entered the room seconds later and read Defendant's screen. *Id.* Bolton then typed a few keys, and Plaintiff assumed that Bolton was deleting the report. *Id.*

Bolton began to lead Plaintiff "towards the holding cell where unruly [d]isruptive inmates are held[,]" but the unit was fully occupied. *Id*. Plaintiff recounted the situation to Bolton, and Bolton subsequently removed Defendant from Plaintiff's pod. *Id*. Defendant entered Plaintiff's pod twice on the night after the incident; during one of these visits, Defendant talked to another officer about the incident while staring at Plaintiff's cell. *Id*. Plaintiff claims that he is "still fearful for his well-being" and that Defendant has taunted Plaintiff and "even asked [Plaintiff] basically to drop the suit after it was filed." *Id*.

From this set of events, Plaintiff alleges that Defendant retaliated against Plaintiff in violation of Plaintiff's First Amendment rights "by writing a bogus violation report due to [Plaintiff] seeking to file a prea [*sic*] complaint against [Defendant]" as well as refusing to call a sergeant for Plaintiff. *Id*. Plaintiff brought suit against Defendant in his individual capacity. under 42 U.S.C. § 1983

## II. SUMMARY OF THE ARGUMENTS

In their memorandum supporting the motion to dismiss, Defendant argues three points: Plaintiff has not alleged a distinct and palpable injury and, thus, lacks standing; the Complaint fails to state a claim for First Amendment Retaliation; and Defendant is entitled to qualified immunity because Plaintiff has failed to allege a constitutional violation. Docket No. 20, p. 3, 5 7. Defendant's reply to Plaintiff's response reasserts lack of standing, failure to state a claim upon which relief may be granted, and entitlement to qualified immunity to demonstrate that the Court should dismiss the case. Docket No. 22.

Plaintiff argues that he has satisfied the threshold for standing and for a First Amendment Retaliation claim. Docket No. 21, p. 1. Plaintiff further claims that Defendant is not entitled to

qualified immunity because Defendant was not performing discretionary functions or serving a penological purpose. *Id.* at 5.

### III.    LAW AND ANALYSIS

#### A.  Prison Rape Elimination Act of 2003

The purpose of PREA is "[t]o provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape." Prison Rape Elimination Act of 2003, 108 Pub. L. 79, 117 Stat. 972. Specifically, "experts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison" and that "[t]he total number of inmates who have been sexually assaulted in the past 20 years likely exceeds 1,000,000." 34 USCS § 30301. Thus, the Act was created in response to the underreported yet substantial risk of sexual assault while imprisoned or in other correctional facilities.

#### B.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Defendant moves to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), courts will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Courts must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555(2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "threadbare recitals of the elements of a cause of action," but rather must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies the wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. Any claim for relief must contain "a short and plain statement of the claim showing that a pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Additionally, courts will consider documents filed after the complaint "as part of the pleadings" on a motion to dismiss. *Brown v Matauszak*, 415 F. App'x 608, 613 (6th Cir. 1975) (quoting *Flournoy v. Seiter*, No. 98-3535, 1987 WL 24129 (6th Cir. Dec. 7, 1987)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F. 3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F. 2d 108, 110 (6th Cir. 1991)). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants.

*Pliler v. Ford*, 542 U.S. 22, 231 (2004). District Courts are also not "required to create" a pro se

litigant's claim for him. *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003).

### C. 42 U.S.C. § 1983

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding [*19] for redress. . .

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution or laws of the United States and must show that the alleged

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S.

42, 48 (1988) (citations omitted). The traditional definition of acting under color of state law

requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state

law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.*

at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

### D. Case at Bar

#### 1. Standing

The first issue before the Court is whether Plaintiff has standing to bring his claim. A

party seeking to invoke a federal court's jurisdiction must establish standing to sue before the

court may consider the merits of the case. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

The Supreme Court has set forth three elements for a plaintiff to establish standing: (1) the

plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the

injury and the challenged conduct; and (3) it must be likely that a favorable decision will remedy

the injury. *Id.* Plaintiff bears the burden of establishing all three elements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

### a. Injury in fact

In order to establish an "injury in fact," a plaintiff must show that he or she "has sustained or is in danger of sustaining some direct injury" as the result of the challenged official conduct and such "injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations omitted). The injury, therefore, must be one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560.

Here, Defendant claims that the only retaliatory action that Plaintiff alleges in the Complaint is that Defendant attempted to file a disciplinary report but was unsuccessful. Docket No. 20, p. 4. Therefore, Defendant asserts that Plaintiff has failed to allege facts sufficient to establish standing. *Id*. However, this is not the only injury claimed by Plaintiff: the Complaint also refers to Defendant refusing to allow Plaintiff to file a PREA complaint by not allowing Plaintiff to speak to a sergeant. Docket No. 14, p. 1. Plaintiff further alleges that the PREA Hotline number was blocked, although Plaintiff does not allege that this was the result of Defendant's actions. Docket No. 21, p. 1. Plaintiff also claims that DCSO would not forward Plaintiff's messages or pictures and is "a[n]tagonized against by officers by being told [Plaintiff] is not liked cause [*sic*] [Plaintiff] file[s] grievances and lawsuits." Docket No. 14, p. 3. Finally, Plaintiff alleges that he became fearful of his well-being because of Defendant's threats (Docket No. 21, p. 2), taunts (Docket No. 14, p. 2), and demeanor (*Id*.).

While Defendant asserts that Plaintiff "changed his story" when responding to the motion to dismiss by stating that "Plaintiff now seems to claim that Defendant Byers' only *threatened* to

file a disciplinary report," this is a misrepresentation of what Plaintiff alleges. Docket. No. 22, p. 1. Rather, as stated above, Plaintiff asserts that Defendant "threatened to write [Plaintiff] up 'issuing a disciplinary report' and then proceed[ed] to type one" when Plaintiff requested a sergeant. Docket No. 21, p. 1.

Further, Defendant asserts that this alleged change of story is not among his allegations in his case, citing to the general rule that courts must only focus on allegations in the pleadings when considering a motion to dismiss. *See Waskul v. Washtenaw Ct. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (citations omitted). However, the general rule is inapplicable here: as stated above, courts will consider documents filed after the complaint by a pro se individual "as part of the pleadings" on a motion to dismiss. *Brown*, 415 F. App'x at 613.

Finally, Defendant maintains that "Plaintiff does not allege that he was somehow prevented from filing his PREA complaint" and that Plaintiff's Response suggests that he "filed several complaints 'grievances' [*sic*] on [Ofc]. Byers regarding this incident. *Id.* (citing Doc. No. 21 at 3). Again, neither assertion is true. As discussed above, Plaintiff claims that Defendant would not allow Plaintiff to talk to a sergeant, and Plaintiff could not use the PREA hotline to report the incident. Docket No. 21, p. 1-2. Further, Plaintiff's Response which Defendant believes that Plaintiff is suggesting that he filed a PREA complaint is taken out of context. Specifically, Plaintiff does not clarify whether he filed a *PREA* complaint regarding the originating incident, but rather states that "inferences was drawn [*sic*] by Plaintiff that Defendant Byers was attempting to bribe Plaintiff to let this matter go … Plaintiff filed several complaints 'grievances' on [Defendant] regarding this incident and others." Docket No. 21, p. 3. It is unclear whether "this incident" refers to the "offensive [and] [d]erogatory sexual comments of Defendant" which gave rise to this lawsuit, or if it refers to the alleged bribery. Docket No. 21, p.

4. Therefore, the Court cannot assume Defendant's interpretation is the Plaintiff's intended meaning.

To establish liability under 42 U.S.C. § 1983, it "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)). Additionally, liability is not created when an officer's role only involves "denial of administrative grievances or the failure to act." *Id*. The Sixth Circuit has held that "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir. 2003) (holding that the inmate did not state a claim by alleging the defendants "repeatedly reject[ed] his grievances"); *Jackson v. Wicking*, No. 3:20-cv-00249, 2020 U.S. Dist. LEXIS 218534 at *2 (M.D. Tenn. Nov. 23, 2020) (asserting that inmates do not have a constitutional right to compel a proper PREA investigation); *Young v. Gundy*, 30 Fed. Appx. 568, 569 (6th Cir. 2002) (stating that "[inmate's] right of access to the courts was not violated when [officer] refused to return his rejected outgoing mail to him"). *See generally Miller v. Haines*, 1998 U.S. App. LEXIS 18239 (6th Cir. 1998) (disallowing a claim when "it does not hinge on the denial of any antecedent rights that [inmate] may have set forth in the [grievance] forms").

However, cases dealing with ineffective grievance procedures relate to the adequacy of the procedure upon filing a complaint—they do *not* refer to barring the inmate from filing a complaint itself. Instead, the Sixth Circuit has held that an "inmate has an undisputed First Amendment right to file [non-frivolous] grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996); *see also Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). Here, Defendant's

actions go beyond a "mere failure to act" because he prevented Plaintiff from filing a PREA complaint, rather than allowing Plaintiff to file the complaint and subsequently failing to take administrative action afterward. Based on the allegations set forth in the pleadings, Plaintiff has successfully alleged an injury in fact regarding his claim that he was prevented from filing a PREA complaint. This allegation satisfies the first element as the injury or threat thereof is real and immediate rather than conjectural and hypothetical. *Lyons*, 461 U.S. at 101-02 (citations omitted).

However, Plaintiff's injury of fear and intimidation is not "real and immediate." *Lyons*, 461 U.S. at 101-02. "A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citations omitted). In this instance, a general fear of one's well-being is not sufficient to constitute an injury "certainly impending" because it is too speculative and imprecise. Likewise, the allegation that Defendant would have successfully filed the disciplinary report against Plaintiff had another officer not intervened is not a "real and immediate" threat of injury. *Lyons*, 461 U.S. at 101-02; (Docket No. 21; p. 2). Plaintiff's allegation rests upon mere speculation and is therefore insufficient to constitute an injury in fact. Finally, Plaintiff's claim that "the palpable injury is that sexual comments are valid as assaults" has no basis under law. (Docket No. 21, p. 2). Therefore, the only injury that meets the *Lyons* standard is Plaintiff's allegation that Defendant prevented Plaintiff from filing a PREA complaint.

### b. Causal connection between injury and challenged conduct

There must also be a causal connection between the injury and the challenged conduct. *Lujan,* 504 U.S. at 560. To show causal connection, the injury must be one "that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent

10

action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). While Plaintiff does not allege that Defendant is responsible for the inoperable PREA Hotline number, Plaintiff does make a clear connection between Defendant refusing to get a sergeant for Plaintiff and Plaintiff's inability to file a PREA complaint. Specifically, Plaintiff asserts that "he wanted to see a sergeant several times and Defendant [d]enied Plaintiff from [d]oing so by threatening [P]laintiff with a disciplinary write up." Docket No. 21, p. 2. Therefore, Plaintiff has established a causal connection between the injury and the challenged conduct.

### c. Likelihood that favorable decision will remedy injury

Finally, Plaintiff must show that it is likely that a favorable decision will remedy the injury. *Lujan,* 504 U.S. at 560. Here, Plaintiff seeks a protective order (although it does not clarify against whom), compensatory and punitive damages, an audit of DCSO's PREA policy, PREA reporting training for DCSO, and that all DCSO staff and officers wear body cameras while dealing with any detainee. Docket No. 14, p. 3. Based on the relief sought, Plaintiff's injury of Defendant barring him from filing a PREA complaint would likely not be redressed by a favorable decision: a protective order, audits, training, and body cameras will prevent future incidents, not redress the present injury. Rather, allowing Plaintiff to file a PREA complaint relieves the injury. Accordingly, a favorable decision would remedy the injury, but the Court would not need to implement Plaintiff's requests in order to do so.

However, Plaintiff's injury of fear for his well-being is possibly redressable through the other measures of relief that he seeks, as they would deter DCSO staff and officers from repeating similar acts. Nonetheless, unlike being barred from filing a PREA complaint, Plaintiff's allegations about feeling fearful and intimidated do not sufficiently create an injury in

fact for reasons discussed above. Thus, whether his sought relief would redress this alleged injury is moot.

## 2. First Amendment Retaliation

The second issue is whether Plaintiff failed to state a claim for First Amendment Retaliation. In order to prevail on a First Amendment Retaliation claim, Plaintiff must demonstrate that: (1) he engaged in protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between the protected speech or conduct and the adverse action (i.e., the adverse action was motivated, at least in part, by the plaintiff's protected speech or conduct). *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). Plaintiff must demonstrate "more than his personal belief that he is the victim of retaliation." *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). Plaintiff plainly satisfies the first element: an attempt to file a PREA complaint is an engagement in protected speech or conduct. Accordingly, the analysis will focus on whether Plaintiff satisfies the second and third prong.

Starting with the second element, Plaintiff must establish that an adverse action was taken against him. In *Thaddeus-X v. Blatter*, the 6th Circuit established that an adverse action is one that would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). As discussed above, the speculative adverse action that Defendant would have completed the disciplinary report had he not been interrupted does not satisfy the threshold. Nor does the generalized claim that he feels intimidated and antagonized by officers for filing this claim. Consequently, the only claim that could constitute an adverse action taken against

12

Plaintiff is the allegation that Defendant would not let him file a PREA complaint by refusing to get a sergeant and threatening to write him up.

Generally, it is "much harder for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern." *Thaddeus-X*, 175 F.3d 3 at 395. Though Defendant asserts that the "conduct … served the legitimate penological purpose of maintaining safety, security, and general order of the jail," Defendant misinterprets "conduct" to refer to the comment made to Plaintiff prompting this claim, rather than the claim that Plaintiff was barred from filing a PREA complaint. Docket No. 20, p. 9. Defendant's refusal to get a sergeant for Plaintiff does not satisfy a legitimate penological concern: disallowing an inmate to report an incident does not maintain safety, security, and general order of the jail. In fact, Defendant's behavior negates the success of these penological concerns as it prevented an inmate from protecting his own safety. Therefore, Plaintiff successfully establishes that an adverse action was taken against him when Defendant refused to allow Plaintiff to file a PREA complaint.

Finally, Plaintiff must show a causal connection between the protected speech or conduct and the adverse action. As indicated above, Plaintiff only needs to demonstrate that the adverse action was motivated at least in part by Plaintiff's protected speech or conduct. *Dye*, 702 F.3d at 294. Again, Defendant focuses on Plaintiff's allegations regarding the attempted filing of a bogus disciplinary charge, which this Court agrees is not a valid claim. However, Defendant does not mention Plaintiff's allegations regarding Defendant barring Plaintiff from filing a PREA complaint by refusing to get a sergeant for Plaintiff. Regarding this allegation, Plaintiff has established that he was engaging in protected speech or conduct and that adverse action was taken against him. Plaintiff further establishes a causal connection between the two by stating

13

that Defendant "violated [Plaintiff's] First Amendment [r]ights by [r]etaliating against [Plaintiff]" and that Plaintiff "seek[s] to suit against [Defendant] for retaliation based on the actions he took by filing a [b]ogus violation report and for refusing to call a sergeant[.]" Docket No. 14, p. 2. Again, the "[b]ogus violation report" does not satisfy the standard for injury in fact or adverse action. *Id.* Nevertheless, because the latter claim that Defendant refused to let Plaintiff talk to a sergeant satisfies elements (1) and (2) under *Dye*, Plaintiff successfully connects his protected conduct with Defendant's adverse action. *Dye*, 702 F.3d at 294.

Accordingly, Plaintiff satisfies all three elements required to prevail on a First Amendment Retaliation claim.

### 3. Qualified Immunity

The final issue is whether Defendant is entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 20 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983). The right at issue "must have been articulated with a significant degree of particularity," so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. *Eugene D. v. Karman*, 889 F. 2d 701, 706 (6th Cir. 1989). Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

However, the 6th Circuit has held that "it is 'generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity' preferring instead that

courts resolve the issue at summary judgment." *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) (citing *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). Specifically, "the fact-intensive nature of the applicable tests make it 'difficult for a defendant to claim qualified immunity on the pleadings *before discovery*.'" *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (quoting *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (emphasis original)). Therefore, this Court will not consider Defendant's qualified immunity claim.

## IV.    CONCLUSION

For the reasons discussed above, the undersigned finds that Plaintiff's First Amended Complaint (Docket No. 14) states plausible claims for relief such that dismissal at this juncture is unwarranted. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Docket No. 19) be **DENIED**.

As previously mentioned, the appropriate and reasonable remedy would be to allow Plaintiff to file his PREA complaint and that it be adjudicated by the DCSO. Were the Plaintiff allowed to file his complaint and have it adjudicated, the matter would be resolved and this action would be moot.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. See *Thomas v. Arn*, 474 U.S. 140, 106 (1985), *reh'g denied*, 474 U.S. 1111, (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**